**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **CV 16-4867-JFW**
[CR 14-685-JFW]                                                                  Date: December 21, 2016

Title:   Marvin Jay Caukin -v- United States of America

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   **Shannon Reilly**                                                **None Present**
   **Courtroom Deputy**                                         **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                                         None

**PROCEEDINGS (IN CHAMBERS):**   ORDER DENYING PETITIONER MARVIN JAY CAUKIN'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY 28 U.S.C. § 2255 [filed 7/1/16; Docket No. 1]

   On July 1, 2016, Petitioner Marvin Jay Caukin ("Petitioner") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody 28 U.S.C. § 2255 ("Motion"). On July 25, 2016, Respondent United States of America (the "Government") filed its Opposition. On October 18, 2016, Petitioner filed a Reply.[1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's December 19, 2016 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**

   **A.   Information**

   On December 5, 2014, the Government filed a three count Information charging Petitioner

---

[1] On August 10, 2016, the Court granted Petitioner's Motion to Extend Time to Respond, and gave Petitioner until October 3, 2016 to file his Reply. On August 15, 2016, the Court continued the hearing on Petitioner's Motion from September 12, 2016, to October 17, 2016. On September 12, 2016, the Court granted Petitioner's Motion to Extend Time to Respond, and gave Petitioner until December 12, 2016 to file his Reply. The Court also continued the hearing on Petitioner's Motion from October 17, 2016, to December 19, 2016.

with embezzling over $10 million from his employer, Gulfstream Aerospace Corp. ("Gulfstream"). Count One charged Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349. Count Two charged Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. Count three charged Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h). The Information also contained three criminal forfeiture allegations based on 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C. § 853, 18 U.S.C. § 982(a)(2)(b), and 18 U.S.C. § 982(a)(1).

### B. Plea Agreement

On January 14, 2015, the parties signed a plea agreement. In the plea agreement, Petitioner agreed to plead guilty to Count One of the Information, and the Government agreed to dismiss the remaining two counts. The plea agreement advised Petitioner that "the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1349, 1341, is: 20 years imprisonment; a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100." Plea Agreement [Docket No. 29], ¶ 6.

In the factual basis section of the plea agreement, Petitioner admitted the following:

> Beginning in or before 2001, and continuing through at least May of 2013, there was an agreement between more than two persons to commit mail fraud. Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it. In furtherance of the conspiracy, defendant and his co-conspirators created fictitious business invoices and submitted them to Gulfstream Aerospace Corp., where defendant would approve them in his capacity as the Director of Finance and Accounting, causing checks to be mailed to pay them. Defendant and his co-conspirators would receive the checks, typically at a rented commercial mailbox, deposit them, and use the proceeds to pay for the personal expenses of both defendant and his co-conspirators. Through this conspiracy, defendant and his co-conspirators defrauded Gulfstream Aerospace out of millions of dollars. Defendant used at least $2.4 million of the proceeds of the fraud to pay for his residences in Calabasas, California and Toluca Lake, California.

Plea Agreement [Docket No. 29], ¶ 11.

The plea agreement provided that Petitioner and the Government had "no agreement as to the appropriate sentence or the applicable Sentencing Guidelines factors except that the parties agree that the appropriate loss enhancement is either 18 levels (§ 2B1.1(b)(1)(J), loss over $2.5 million) or 20 levels (§ 2B1.1(b)(1)(K), loss over $7 million). Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history score and category, base offense level, adjustment, departures, variances, and any other specific offense characteristics." Petitioner and the Government also reserved "the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

In addition, Petitioner waived his right to appeal, with the exception of an appeal based on a claim that his guilty plea was involuntary. Plea Agreement [Docket No. 29] at ¶ 16. Petitioner also

waived his right to bring a post-conviction collateral attack on the conviction or sentence except a post-conviction collateral attack based on a claim of ineffective assistance of counsel. *Id.*, ¶ 2(h).

Petitioner signed the plea agreement in two places, including under the following certification:

> I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

### C.   Change of Plea Hearing

On January 16, 2015, Petitioner pled guilty to Count One of the Information pursuant to the written plea agreement. Petitioner was placed under oath and advised that if he answered any of the Court's questions falsely, that his answers could be used against him in another prosecution for perjury or for the making of a false statement. The Court conducted a thorough and extensive Rule 11 plea colloquy.

Petitioner confirmed that he had read the plea agreement, had discussed all of its terms with counsel, had signed the plea agreement, had understood the plea agreement and all of its terms, and did not need additional time to discuss any terms of the plea agreement with counsel. During the hearing, Petitioner admitted to the factual basis for his plea consistent with his plea agreement and stated that he was pleading guilty because he did the acts charged in Count One of the Information and that he was pleading guilty, because he was, in fact, guilty.

During the plea colloquy, Petitioner also confirmed that he was satisfied with the advice and representation provided by his counsel and that counsel had reviewed the facts of the case and the discovery provided by the Government with Petitioner. Petitioner's counsel also confirmed that he had reviewed the facts of the case and discovery provided by the Government and that he had reviewed the facts of the case and the discovery with Petitioner. The Court concluded that there was a factual basis for the plea and that Petitioner was entering his guilty plea freely and voluntarily with a full understanding of the charge against him and the consequences of his plea. Accordingly, the Court accepted and entered Petitioner's plea of guilty to Count One of the Information.

### D.   Sentencing Filings and Sentencing Hearing

On February 23, 2015, the United States Probation Office ("USPO") filed its recommendation letter and Presentence Investigation Report ("PSR"). Docket Nos. 34 and 35. The USPO calculated an advisory guideline range of 135 to 168 months and recommended a term of imprisonment of 144 months followed by 3 years of supervised release. The USPO also recommended that Petitioner pay $11,512,00 in restitution. On May 11, 2015, Petitioner filed objections to the PSR and a sentencing memorandum. Because of a dispute as to the amount of loss for guideline calculations and restitution, the Court filed an Order on May 14, 2015 [Docket No. 41] ordering the parties to meet and confer and resolve the issue and to file a Joint Statement setting forth the agreed total amount of loss. On June 1, 2015 the parties filed a Joint Statement Regarding Loss, advising the Court that the parties agreed that the appropriate guideline loss amount and restitution amount was $10,257,414.12. In addition, on June 1, 2015, the Government filed its sentencing memorandum and recommended a sentence of 150 months. On June 17, 2015, the USPO filed an addendum to the PSR and a revised recommendation letter and recommended that Petitioner pay the agreed upon $10,257,414.12 in restitution.

On June 22, 2015, the Court conducted an extensive sentencing hearing, and sentenced Petitioner to a term of imprisonment of 135 months, followed by three years of supervised release and ordered to pay restitution of $10,257,414.12. Petitioner did not file a notice of appeal.

### E.   Section 2255 Motion

On July 1, 2016, Petitioner filed his Motion, claiming ineffective assistance of counsel by his attorneys, Mark Werksman and Mark Hathaway. Specifically, Petitioner argues that: (1) his counsel failed to properly respond or object to an improper enhancement for Aggravating Role; (2) Petitioner never agreed to the stipulated $10,257,414.12 loss calculation; (3) counsel failed to dispute allegations of previous misconduct; (4) his counsel failed to challenge or object to the loss calculation; and (5) his counsel were unaware of pending changes to the sentencing guidelines that were to take effect in November 2015.

## II.   Legal Standard

Ineffective assistance of counsel claims are evaluated under the two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 687 (1984).[2] To prevail on a claim of ineffective assistance of counsel under *Strickland*, a party must demonstrate both (1) that

---

[2] To the extent Petitioner argues that the *Strickland* test is inapplicable and that prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984), the Court disagrees. In *Cronic*, the Supreme Court carved out certain narrow exceptions to the general *Strickland* test, holding that in limited situations the defendant need not show prejudice as required under *Strickland*. "Specifically, prejudice may be presumed when the defendant is denied counsel at a critical stage of his trial, counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Young v. Runnels*, 435 F.3d 1038, 1042-43 (9th Cir. 2006) (internal citations and quotations omitted). The Court concludes that none of these limited exceptions are applicable.

counsel's actions fell outside the range of professionally competent assistance, and (2) that petitioner suffered prejudice as a result. *Id.* at 687-90; *see also United States v. Leonti*, 326 F.3d 1111, 1120-21 (9th Cir. 2003); *Anderson v. Calderon*, 232 F.3d 1053, 1084 (9th Cir. 2000); *United States v. Allen*, 157 F.3d 661, 665 (9th Cir. 1998). The first prong of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Demonstrating prejudice under the second prong of the test requires more than a showing that the error in question might have had some conceivable effect on the outcome of the proceeding. Instead, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) ("We normally apply a strong presumption of reliability to judicial proceedings and require a defendant to overcome that presumption by showing how specific errors of counsel undermined the reliability of the finding of guilt. Thus, in cases involving mere 'attorney error,' we require the defendant to demonstrate that the errors actually had an adverse effect on the defense.") (citations and internal quotation marks omitted, alteration removed).

Judicial scrutiny of counsel's performance is highly deferential, and courts will not – as a general rule – second-guess the strategic choices made by counsel. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

### III. Discussion

Upon review of the record and the briefs and evidence submitted by the parties, the Court concludes that Petitioner has failed to demonstrate that his counsel's performance fell outside the range of professionally competent assistance or that Petitioner suffered prejudice as a result. Indeed, Petitioner's counsel successfully argued for a low-end sentence despite the Government's objections and its request for a significantly higher sentence of 150 months.

    **A. Petitioner Has Failed to Demonstrate Deficient Performance or Prejudice During Sentencing**

        **1. Petitioner Has Failed to Demonstrate that Counsel Did Not Properly Respond or Object to an Improper Enhancement for Aggravating Role in Petitioner's PSR.**

Petitioner's first ground for his Motion is vaguely based on his complaint that the PSR's and Court's finding regarding the "size of the criminal conspiracy, the number of participants, and the role of" Petitioner did not match his own contentions despite Petitioner "consistently and repeatedly inform[ing] his counsel" of "inaccuracies" and that his counsel's failure to correct these inaccuracies led to improper sentencing enhancements. However, Petitioner offers no support for his argument beyond arbitrarily dividing the invoices his "companies" submitted to Gulfstream into fraudulent and non-fraudulent categories, and, thus, it is impossible to determine if there were any inaccuracies in

the PSR's and the Court's findings or if those inaccuracies led to improper sentencing enhancements. Accordingly, Petitioner has failed carry his burden of showing either deficient performance by his counsel or prejudice.

### 2. Petitioner Has Failed to Demonstrate that the Agreed-Upon Loss Calculation Was Incorrect.

Petitioner's second and fourth grounds for his Motion relate to his contention that the actual loss to Gulfstream was less than the agreed upon $10,257,414.12, and that he never agreed to the amount of loss. Although the Government and probation officer initially calculated the actual loss to Gulfstream at $11,512,000, Petitioner repeatedly emailed his counsel that the actual loss was less. After the Court ordered the parties to agree on restitution, the parties stipulated to a loss of $10,257,414.12, which was based on the out-of-pocket loss calculated by Gulfstream's insurer, Zurich Insurance, but excluded $250,000 in accounting fees that Gulfstream actually incurred and paid in order to correct its ledgers.

Petitioner now argues that the agreed upon amount of the loss was incorrect and that he never agreed to that amount. However, Petitioner never raised this issue at his sentencing. In addition, even assuming that Petitioner advised his counsel that he would not stipulate to $10,257,414.12 in loss, he has failed to demonstrate that the agreed upon loss was not accurate. In this case, the agreed upon amount of loss is $250,000 less than what Gulfstream's insurer, Zurich Insurance, paid for the loss sustained by Gulfstream and, thus, is a "reasonable estimate of the loss." USSG § 2B1.1, app. N. 3(C). Moreover, Petitioner's counsel's strategy of agreeing to a loss amount rather than disputing the easily provable higher loss was beneficial to Petitioner because a "defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." USSG 3E1.1, app. n. 1(A); *see also Britt v. United States*, 2010 WL 3385221, * 3 (W.D. Wash. 2010) (denying Section 2255 claim based on defense counsel's stipulation to loss of $466,622 when there was evidence losses were higher, and noting that "Britt cannot show prejudice because had counsel raised Mr. Britt's meritless arguments, Mr. Britt may have lost the 3–level adjustment for acceptance of responsibility"). Furthermore, the stipulation regarding the loss amount prevented the Government from seeking an enhancement based on intended rather than actual loss. Accordingly, Petitioner has failed carry his burden of showing either deficient performance by his counsel or prejudice.

### 3. Petitioner Has Failed to Demonstrate that Counsel Did Not Dispute Allegations of Previous Misconduct or That He Was Prejudiced by Counsel's Alleged Failure.

Petitioner's third ground for his Motion is based, in part, on various allegations of his previous misconduct that Petitioner contends his counsel failed to dispute. For example, Petitioner contends that his 1999 supervised release revocation was misrepresented in the PSR and that his counsel should have obtained "copies of the 1999 Revocation Hearing Transcript" to correct the record. Petitioner also contends that an earlier victim of his embezzlement misremembered certain details regarding that crime, such as whether Petitioner worked for the acquiring or acquired company. Although it appears that Petitioner's actual complaint is that the Government mentioned, and the Court considered, Petitioner's previous embezzlement at all, the Court must

consider the "history . . . of the defendant" in fashioning the appropriate sentence. 18 U.S.C. § 3553(a)(1). In addition, despite the earlier embezzlement, the Court sentenced Petitioner to the low end of the advisory guideline range. Likewise, Petitioner's counsel's failure to rebut the Government's argument that Petitioner hid the embezzled money that was not accounted for did not increase Petitioner's offense level or criminal history category. Accordingly, Petitioner has failed carry his burden of showing either deficient performance by his counsel or prejudice.[3]

Petitioner also argues that his counsel should have rebutted the Government's argument that he took advantage of those persons in whose names he committed the fraud by explaining that he was really helping them. In fact, his counsel did advance that argument: "Much of the money that was misappropriated was used to help other people who were in serious financial straits." Petitioner's Sentencing Memorandum [Docket No. 40], 18:5-6. Similarly, Petitioner contends that his counsel did not argue that his outstanding work performance at Gulfstream justified a sentencing break, even though Petitioner "informed his counsel many times that he had been outstanding" at his job there. However, once again, his counsel did advance that argument in his sentencing memorandum:

> Additionally, one should not forget that Mr. Caukin, during his tenure at Gulfstream, proved to be an invaluable member of the company. Mr. Caukin poured his heart and soul into Gulfstream and spent months and months of his life travelling for the company. In truth, Mr. Caukin helped save General Dynamics, Gulfstream's parent company, millions of dollars in fraud resulting from bad management. Mr. Caukin helped the company get control of a number of newly made acquisitions and was an integral part of these companies' turnaround teams. Mr. Caukin was instrumental in turning many of these subsidiaries and offices around from entities that were bleeding money to profitable enterprises.

*Id.*, at p. 18:7-15. Accordingly, Petitioner has failed carry his burden of showing either deficient performance by his counsel or prejudice.

### 4. Petitioner Has Failed to Demonstrate that Counsel Failed to Know About and Consider the Changes in the Sentencing Guidelines or That He Was Prejudiced by the Alleged Failure.

Petitioner's fifth ground for his Motion is based on Petitioner's argument that his counsel failed to know about changes to the Sentencing Guidelines that were effective November of 2015, which was five months after Petitioner was sentenced. These changes to the Sentencing Guidelines were first made public on January 16, 2015, which is two days after Petitioner signed his plea agreement. Petitioner argues that his counsel should have had him sign an earlier draft of his plea agreement that stated he had embezzled Gulfstream "out of at least $8.5 million" rather than the plea agreement he did sign, which referred vaguely to "millions" that had been embezzled.

---

[3] Similarly, Petitioner has failed to carry his burden of showing either deficient performance by his counsel or prejudice by arguing that counsel advised him not to explain his reasons for committing the embezzlement, which apparently include paying for a kitchen remodel, buying a $1 million home, and buying a second $2 million home.

However, Petitioner fails to explain how he was harmed by signing the less specific draft of the plea agreement. In addition, Petitioner fails to explain how his counsel should have known about changes to the Sentencing Guidelines that were not made public until after he had signed his plea agreement, or how those changes, which did not go into effect until after Petitioner had been sentenced adversely affected him. Accordingly, Petitioner has failed carry his burden of showing either deficient performance by his counsel or prejudice.

### B. Petitioner is Not Entitled to an Evidentiary Hearing

Pursuant to Section 2255, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing . . . and determine the issues and make findings of fact and conclusions of law." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (*quoting* 28 U.S.C. § 2255). Section 2255 only requires that the Court carefully consider Petitioner's claims "including full opportunity for presentation of the relevant facts." *Id.* (citation omitted). Because the record conclusively demonstrates that Petitioner is not entitled to relief on any of the grounds set forth in his Motion, the Court finds that an evidentiary hearing would not be of assistance to the Court and therefore is not required. *See, e.g., United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) ("The district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief.").

### IV. Conclusion

For all of the foregoing reasons, Petitioner's Motion is **DENIED**.[4]

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is **DENIED**. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

---

[4] On December 14, 2016, Petitioner filed a Motion to Delay Hearing, seeking to delay the hearing on his Motion "for an indeterminate period in order to clarify the action(s) the Government has taken against Brent Caukin," Petitioner's son. Because the issues raised in Petitioner's Motion to Delay Hearing are not related to the issues raised by Petitioner in his Motion, Petitioner's Motion to Delay Hearing is **DENIED**.